**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**RUSSELL D. DAVIDSON,**

      **Plaintiff,**

                                    **Civil Action 2:17-cv-1121**
**vs.**                                **Judge James L. Graham**
                                    **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Russell D. Davidson, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for social security disability insurance benefits and

supplemental security income. This matter is before the Chief United States Magistrate Judge

for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the

Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and

the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that

the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's

decision.

## I.     BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income in

March 2014, asserting that coronary artery disease ("CAD") with 5 cardiac catheterizations,

Crohns disease/colitis, diabetes mellitus, and high cholesterol constitute a disability, which began on May 3, 2013.  (R. at 237-45, 246-51, 271.)  Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 184-85.)  Administrative Law Judge Timothy Gates ("ALJ") held a hearing on July 14, 2016, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 48-69.)  A vocational expert also appeared and testified at the hearing.  (R. at 69-74.)  On October 5, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 11–33.)  On October 20, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1–7.)  Plaintiff then timely commenced the instant action.

## II.  HEARING TESTIMONY

### A.  <u>Plaintiff's Testimony</u>

At the administrative hearing, Plaintiff testified that he lived alone, but his daughter visits him a "couple times a week."  (R. at 48.)  He had a driver's license but only drove a few times per month.  (R. at 49.)  Plaintiff testified he had been laid off in 2013 and that he last worked as an assistant supervisor for a seed company.  (R. at 50-52.)  However, he was absent "two to three days a week" from bleeding, feeling dizzy and because he "just didn't feel good."  (R. at 62.)

Plaintiff believes he is unable to work due to constant angina pain, chronic dizziness, stomach cramping from his Crohn's disease, urinary frequency, swelling of the hands, pain in the knees, headaches, and neuropathy in the feet and hands.  (R. at 53.)  Plaintiff testified that he experiences pain down the right side and chest pressure with associated dizziness and nausea.

(R. at 54.)  He also suffers from pain and swelling in his hands that he contends causes difficulty holding onto things, including his cane at times.  (R. at 57-58, 64.)

Plaintiff also testified to experiencing flare-ups of Crohn's disease every couple of years with "a lot of cramping."  (R. at 60.)  He has episodes of dizziness lasting 20-30 minutes.  (R. at 63.)  Plaintiff estimated he can walk approximately half a block before needing to stop to get his "bearings."  (R. at 55-56.)  He had to stop three times when walking from parking into the hearing building which was three blocks away.  (R. at 63.)  He experiences discomfort while sitting and must adjust himself "back and forth" and stretch his legs out.  (R. at 56.)  He testified that he can lift 10 pounds.  (*Id.*)  Reaching up aggravates his lower back pain.  (R. at 65.)

As to his activities of daily living, Plaintiff testified his daughter does his laundry and helps with cleaning.  (R. at 56.)  He uses a shower chair and tub bar when bathing because of dizziness when standing.  (R. at 57.)  Plaintiff eats primarily microwavable foods and sandwiches.  (R. at 61.)  He goes grocery shopping but uses a cane while he is in the grocery store.  (*Id.*)  He wears slip on shoes.  (R. at 64-65.)  Plaintiff has difficulty sleeping because of sleep apnea and back pain, noting he usually sleeps only four hours a night.  (R. at 60-61.)  He spends most of his days watching television and reading.  (R. at 62.)  However, he must lie down for about an hour every day.  (R. at 68-69.)  Plaintiff testified to experiencing short term memory loss.  (R. at 65-66.)  He began using a cane that was prescribed by Dr. DeWalt approximately a year-and-a-half prior to the hearing.  (R. at 66-67.)  He must use the bathroom 3 to 4 times per hour.  (R. at 73-74.)

**B.**     **Vocational Expert Testimony**

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past relevant work includes work as an assistant supervisor, i.e. a dock supervisor, a medium semi-skilled job; a light truck driver, a medium, semi-skilled job; a material handler, a heavy, semi-skilled job; and a packing machine operator, a medium, unskilled job. (R. at 69-70.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 70-72.) Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could not perform his past relevant work, but could perform approximately 276,000 unskilled, sedentary jobs in the national economy such as an assembler, sorter, and inspector. (R. at 72.) The VE also testified that if the hypothetical individual would miss more than three days of work a month, it would be work preclusive. (R. at 73.) The VE further testified that if the hypothetical individual were off task more than five or six minutes an hour, he would need an accommodation to keep a job. (R. at 74.)

## III. MEDICAL RECORDS[1]

**A.**     **David DeWalt, D.O.**

Plaintiff began treating with primary care physician, Dr. DeWalt on January 31, 2013. He complained of dizziness and shaking, ear pain with ringing, and coughing. He reported a history of mild chest pain that had been present since the year prior. He had a heart catheter in March 2012, which was essentially normal. Since the heart catherization, however, Plaintiff had

---

[1] In addition to physical impairments, the undersigned recognizes that Plaintiff alleges disability in part because of his mental impairments. Plaintiff, however, limits his arguments to his physical impairments and limitations in his Statement of Errors. Accordingly, the Court will

not been compliant with medications or follow-up.  Dr. DeWalt noted on examination that Plaintiff did not appear well and he had swollen turbinates in his nose, and mild expiratory wheezing that resolved with a nebulizer.  Dr. DeWalt diagnosed shortness of breath, acute bronchitis, diabetes mellitus, hypercholesterolemia, and hypertension.  Dr. DeWalt referred Plaintiff to the emergency room for further evaluation of his heart.  (R. at 1024-26.)  Plaintiff was evaluated in the emergency room that day and on examination exhibited mild chest wall tenderness along the parasternal borders bilaterally.  (R. at 446.)  Plaintiff was diagnosed with acute bronchitis, cough, headache, chest pain, diabetes, hyperglycemia, bronchitis without inhaler, cough, headache pain, and upper respiratory infection and treated with pain medication. (R. at 445-46.)

In February 2013, Plaintiff complained of lower abdominal pain and nausea.  On examination, Dr. DeWalt found a pained appearance and tenderness in the left lower abdominal quadrant.  Dr. DeWalt diagnosed left lower quadrant abdominal pain and prescribed antibiotics. (R. at 1020-22.)

On May 13, 2013, Plaintiff complained of right ear pain radiating down into his neck and stomach cramps.  (R. at 1009.)  He reported his sugar levels had been high recently.  Dr. DeWalt found right temporomandibular retraction and mild erythematous in the ear, and a tender, swollen node in the right submandibular region on examination.  (*Id.*)  Dr. DeWalt diagnosed diabetes mellitus, high cholesterol, hypertension, otitis media, and coronary artery disease ("CAD").  He increased Plaintiff's insulin.  (R. at 1010-11.)  When seen on May 30, 2013, Plaintiff complained of chest pain, especially with exertion, fatigue, shortness of breath, and a

---

focus its review of the medical evidence on Plaintiff's physical impairments and limitations.

headache with ear pain. (R. at 997.) Dr. DeWalt referred Plaintiff to the emergency room for further evaluation. (R. at 998.) While in the emergency room, Plaintiff's chest pain improved with rest and use of Nitroglycerin. (R. at 450.) A nuclear cardiac study revealed an abnormal left ventricle perfusion and exercise myocardial perfusion, small minimally reversable mid to basal anteroseptal defect with abnormal wall motion consistent with a previous infarction, and an anteroseptal defect. (R. at 644-46.) The test was terminated after Plaintiff exercised for 08:50 because of fatigue. (*Id.*) An x-ray showed a mild heart enlargement, but no active disease. (R. at 360.) Plaintiff was diagnosed with acute headache and chest pain. (R. at 451.)

Plaintiff was seen for hospital follow-up on June 11, 2013. He complained of "extreme" fatigue and tiredness, a headache and neck pain. Dr. DeWalt noted Plaintiff's blood sugars were "poorly controlled," and his "cardiovascular fitness is quite poor." On examination, Dr. DeWalt found spasm in the posterior occipital region. Dr. DeWalt increased Plaintiff's insulin. (R. at 993-95.)

On September 25, 2013, Plaintiff stated his blood sugars remained high and he had an upset stomach with pressure and diffuse discomfort, and some blood in his stool. On examination, Dr. DeWalt found a distended abdomen with mild diffuse tenderness. He again increased Plaintiff's insulin. (R. at 988-89.)

Plaintiff was hospitalized in January 2014 for pneumonia and chronic obstructive pulmonary disease ("COPD"). (R. at 384-88, 453-55.) Objective testing revealed an abnormal EKG (R. at 549); a CT indicated coronary artery disease with mild cardiomegaly (R. at 388, 622); and a chest X-ray showed no evidence of acute disease. (R. at 359.) When seen by Dr. DeWalt for follow-up of this hospitalization, Plaintiff reported he continued to have shortness of

breath, coughing, fatigue, and chest pain. Dr. DeWalt diagnosed pneumonia, anxiety, diabetes with neurological manifestations, and hypertension. Dr. DeWalt prescribed additional hypertension medications. (R. at 971-73.)

In March 2014, Plaintiff stated he had worsening abdominal discomfort with blood in his stool for several weeks. He was found to have tenderness in the left lower quadrant of the abdomen. Dr. DeWalt prescribed an anti-anginal, Nitroglycerin, and a beta blocking agent. (R. at 968-70.)

Dr. DeWalt completed a Multiple Impairment Questionnaire April 3, 2014, in which he listed Plaintiff's diagnoses as CAD, diabetes mellitus type 2, high cholesterol, hypertension, and Crohn's disease. (R. at 1074.) Clinical and laboratory diagnostic findings included rectal bleeding, poor balance, numbness in the feet, and poor blood sugar levels shown by blood tests. (*Id.*) Plaintiff's symptoms included rectal bleeding, abdominal pain in the left lower quadrant, and burning pain in the extremities, precipitated by poor blood sugar levels. (R. at 1075-76.) Dr. DeWalt estimated Plaintiff's pain level as an 8 on a 10-point pain scale. (R. at 1076.) Dr. DeWalt opined that during a typical workday, Plaintiff could sit for 3 hours total, stand/walk for 1 hour or less total, and must get up every 30 minutes and move around for 5 minutes before returning to a seated position. (R. at 1076-77.) He could occasionally lift/carry 5 pounds and had significant limitations in reaching, handling, fingering, or lifting because of peripheral neuropathy. (R. at 1077.) Dr. DeWalt found Plaintiff to be moderately limited in his ability to use the bilateral arms for reaching, including overhead. (R. at 1078.) Dr. DeWalt indicated Plaintiff's symptoms were likely to increase in a competitive work environment. (*Id.*). He

concluded that Plaintiff was likely to be absent from work more than 3 times a month. (R. at 1080.)

When seen in August 2014, Plaintiff continued to have elevated blood sugars. He reported poor sleep with frequent tiredness and fatigue Dr. DeWalt noted that Plaintiff's Crohn's was "under fairly good control," and increased his diabetes medication. (R. at 1594-96.) In September 2014, Plaintiff reported feeling "somewhat tired and fatigued." Dr. DeWalt noted Plaintiff's blood sugars "have been doing quite well." He was not experiencing any chest pain, shortness of breath, or abdominal discomfort. (R. at 1623-24.) On October 24, 2014, Dr. DeWalt opined that Plaintiff would be unable to work indefinitely because of Crohn's disease, heart disease, and diabetes. (R. at 1155.)

In January 2015, Dr. DeWalt noted that Plaintiff's most recent A1c blood-sugar level was around 7. He had good control of his Crohn's disease. He complained of bilateral hip and hand discomfort. Dr. DeWalt found "significant decreased range of motion" in his hips, and mild osteoarthritic changes in his hands. Dr. DeWalt diagnosed hip pain and pain in the hands and ordered x-rays. (R. at 1640-41.) X-rays of the hips revealed mild joint space narrowing and subchondral sclerosis in the femoral acetabular joint and enthesopathy in the greater trochanter bilaterally. (R. at 1365.) X-rays of the pelvis revealed moderate degenerative change of the sacroiliac joints and degenerative change involving the lumbar vertebral bodies. (R. at 1368.)

When seen in April 2015, Plaintiff stated he continued to have low back and hip pain. He had difficulty sitting or standing for extended periods of time. Dr. DeWalt found chronic spasm in the lumbar paraspinals and recommended pain management. (R. at 1654-56.)

On June 24, 2015, Plaintiff complained of discomfort and swelling in the right knee resulting from a fall while walking up a flight of stairs. On examination, Dr. DeWalt found a small joint effusion on the right with tenderness and swelling over the suprapatellar bursa. Dr. DeWalt diagnosed right knee joint effusion and osteochondroma of the right femur. (R. at 1673-74.)

Dr. DeWalt prepared a narrative medical source statement on June 29, 2015, wherein he reported treating Plaintiff for several years for multiple medical problems, including Crohn's disease, chronic back pain, CAD, sleep apnea, chronic hip pain, uncontrolled diabetes, diabetic neuropathy, anxiety, and GERD. Dr. DeWalt noted that Plaintiff was also followed by multiple specialists, including gastroenterology, pain management and cardiology. Dr. DeWalt opined that Plaintiff's condition had worsened over time and he had daily pain, which restricted his ability to sit or stand for extended periods of time. He noted that Plaintiff was treated with injections and chronic pain medicine, in addition to medications for management of Crohn's disease. Plaintiff also had fluctuating, poorly controlled blood sugars. He also had loss of sensation in his feet and was "off balance at times." He had limited ability to focus and concentrate on tasks. Dr. DeWalt opined that Plaintiff could not work a full-time job "given his multiple medical problems" and would likely be permanently disabled "given the chronicity of his medical issues." (R. at 1678.)

In the last treatment note prior to the administrative hearing, Plaintiff was seen for a pre-op screening for a right knee arthroscopy with medical repair. His cardiologist cleared Plaintiff for this surgery. He denied symptoms of chest pain or shortness of breath. On examination, Dr.

DeWalt found a bulging abdomen and tenderness and spasm in Plaintiff's neck. Dr. DeWalt cleared Plaintiff for surgery. (R. at 1682-83.)

B. **Seth Levin, D.O.**

In May, 2014, gastroenterologist Dr. Levin performed a colonoscopy and biopsy. The results were consistent with Crohn's disease and chronic inflammatory bowel syndrome ("IBS"). (R. at 1322-26.)

Dr. Levin examined Plaintiff on November 19, 2014 at which time Plaintiff reported that he was doing well with his treatment for Crohn's. Dr. Levin noted Plaintiff with 5/5 muscle strength with normal tone, clear lungs, and normal heart function. (R. at 1636.) A biopsy performed on November 28, 2014 revealed mild duodenitis and moderate chronic inflammation. (R. at 1346.)

On October 1, 2015, Dr. Levin examined Plaintiff and noted all normal results. (R. at 1807.) At that appointment, Plaintiff stated that he was "doing very well overall." (*Id*.)

C. **Michael Bourn, D.O.**

Pain management physician Michael Bourn, D.O. diagnosed Plaintiff with chronic pain syndrome and back degeneration on May 11, 2015. Plaintiff's physical examination revealed mid to lower back tenderness and painful movement. (R. at 1666-67.) Plaintiff returned to Dr. Bourn in September, November, and December of 2015. His physical examinations were normal, and Dr. Bourn noted each time the efficacy of Plaintiff's pain medication, his improved quality of life, and his positive assessment of his own progress. (R at 1307-08, 1310-11, 1313-14.)

Dr. Bourn saw Plaintiff on January 4, March 2, and May 2, 2016.  (R. at 1298, 1301 &

1306.)  All of the examinations were essentially normal.  (*Id.*)

**D.  Dr. Anthony Chapekis, M.D.**

On September 9, 2014, cardiologist Anthony Chapekis, M.D. performed an unremarkable

physical exam.  Because he did not feel there were enough symptoms, Dr. Chapekis declined to

perform further testing and noted that Plaintiff was doing "relatively well," with stable CAD, and

no clear limiting angina.  (R. at  1170-73.)  In a follow-up letter to Dr. DeWalt, Dr. Chapekis

added that Plaintiff was on "excellent doses" of his hyperlipidemia medication.  (R. at 1156.)

On October 6, 2015, Dr. Chapekis performed another exam and noted nothing

remarkable.  Plaintiff denied loss of vision and balance, numbness, bowel changes, and irregular

heartbeat.  Dr. Chapekis found that Plaintiff's chest pain syndrome had not worsened, and was

"not limiting," and had no "significant [surgery-related] cardiac risk."  (R.  at 160-61.)

**E.  State Agency Review**

In May 2014, after review of Plaintiff's medical record, Elizabeth Das, M.D., opined that

Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand/walk for about

six hours out of eight, and sit for six hours out of eight.  (R. at 107.)  Dr. Das also found Plaintiff

could never climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs, stoop, crouch, or

crawl; with unlimited balance or kneeling.  (R. at 107-08.)  Plaintiff was also found to have

environmental limitations of avoiding concentrated exposure to extreme cold or heat, wetness

and humidity.  (R. at 108.)  Dr. Das assessed Plaintiff as fully credible noting his symptoms are

generally consistent with his diagnosis and objective findings and his activities of daily living

appear limited appropriately with the level of his symptoms.  (R. at 107.)  In September 2014,

Leon D. Hughes, M.D., reviewed the record upon reconsideration and affirmed Dr. Das'
assessment.  (R. at 129-31.)

## IV.  THE ADMINISTRATIVE DECISION

On October 5, 2016, the ALJ issued his decision.  (R. at 11-33.)  The ALJ noted that
Plaintiff met the insured status requirements through December 31, 2017.  At step one of the
sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially
gainful activity since May 3, 2013, the alleged onset date.  (R. at 14.)  The ALJ found that
Plaintiff has the following severe impairments:  ischemic heart disease; inflammatory bowel
disease (IBS); diabetes mellitus, type II; hypertension; degenerative joint disease of the right
knee, status post meniscus tear, osteoarthritis, and arthroscopic surgery in December 2015;
degenerative joint disease of the hips; degenerative disc disease of the spine; chronic obstructive
pulmonary disease (COPD); and obesity.  (*Id.*)  The ALJ determined that Plaintiff's meniscal tear
of the left knee; deep vein thrombosis; sleep apnea; hearing loss; and bilateral hand pain are

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or
    equal the criteria of an impairment set forth in the Commissioner's Listing of
    Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant
    perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual
    functional capacity, can the claimant perform other work available in the national
    economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

nonsevere impairments.  (R. at 14-16.)  He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 18.)  The ALJ assessed the severity of Plaintiff's impairments by comparing the medical evidence to the requirements of the following listings: 9.00 for endocrine disorders and SSR 14-2p for guidance in evaluating diabetes mellitus; and he addressed Plaintiff's obesity using Listings l.00Q, 3.00I and/or 4.00F.  (R. at 18-19.)  At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the [Plaintiff] could occasionally climb ramps and stairs, but would be precluded from climbing ladders, ropes, and scaffolds.  He could occasionally stoop, kneel, crouch, and crawl.  He would be limited to occasional balancing and could occasionally use right foot controls.  Further, the [Plaintiff] could have frequent exposure to extreme cold, extreme heat, wetness, and humidity.

(R. at 19.)  In making the above determination, the ALJ assigned "little" weight to Dr. DeWalt's June 2015 opinion that Plaintiff is unemployable; "some" weight to Dr. DeWalt's April 2014 opinion; and "no" weight to Dr. DeWalt's October 2014 opinion.  (R. at 28-30.)  The ALJ also assigned "some" weight to the assessments from the state agency reviewing physicians, Drs. Das and Hughes.  (R. at 31.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff is unable to perform his past relevant work but he can perform jobs that exist in significant numbers in the national economy.  (R. at 31-32.)  He therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 32-33.)

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

# V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In his Statement of Errors, Plaintiff contends that the ALJ failed to properly weigh the medical opinion evidence. Plaintiff next argues that the ALJ failed to properly evaluate his testimony. (ECF No. 7.) The Court discusses each of these contentions of error in turn.

**A.     Treating Physician and Weighing of Opinion Evidence**

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 408.[3] If the treating physician's opinion is "well-supported by medically

---

[3] "Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017." *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *5 n.2. (N.D. Ohio Feb. 21, 2019) (citing 82 Fed. Reg. 5844-5884 (Jan. 18, 2017)). Plaintiff's claim was filed before March 27, 2017, before the new regulations took effect.

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).  There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(d).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### 1. Dr. DeWalt's 2014 Opinion

Substantial evidence supports the ALJ's decision to afford only some weight to Dr. DeWalt's 2014 Opinion.  Contrary to Plaintiff's assertion that he gave narrative responses, Dr. DeWalt provided almost no rationale for reaching his bare-boned conclusions, offered mostly one or two-word answers and checked off boxes on the questionnaire.  (R. at 1074-81.)  The ALJ properly discounted the opinion for these reasons.  *See* 20 C.F.R. § 404.1527(c)(4) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion").  The Court of Appeals for the Sixth Circuit has consistently found that such forms may be entitled to less weight when they "provid[e] very little explanation of the information [] relied upon in forming the opinion."  *Ellars v.*

*Comm'r of Soc. Sec.*, 647 F. App'x 563, 566–67 (6th Cir. 2016) ("Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that did not cite clinical test results, observations, or other objective findings") (citations and quotation marks omitted); *McKeown v. Colvin*, No. 1:15-CV-671, 2017 WL 769846, at *5 (S.D. Ohio Jan. 31, 2017) (affirming ALJ's assignment of little weight to opinion, based in part because it was rendered on a "check-off form" with little accompanying explanation).

Here, Dr. DeWalt merely compiled a list of Plaintiff's diagnoses and symptoms, and made a reference to a single undated A1C blood-sugar reading. (R. at 1074-81.) He did not refer to any specific examinations, test results, or other assessment tools to form his opinions. (*Id.*) His superficial explanations fail to demonstrate that he relied upon "medically acceptable clinical and laboratory diagnostic techniques" to reach his conclusions. The ALJ therefore properly discounted Dr. DeWalt's 2014 opinion. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation"); *Steele v. Berryhill*, No. 3:15-cv-342, 2017 WL 1159780, *5 (S.D. Ohio Mar. 29, 2017) (ALJ properly discounted treating physician's opinion based on her failure to support proposed limitations with objective evidence).

The ALJ provided good reasons for assigning limited weight to Dr. DeWalt's 2014 Opinion. The ALJ found that Dr. DeWalt's opinion was inconsistent with the overall medical record. (R. at 29.) The ALJ noted that while the record contains some evidence of hand pain and swelling, the medical record does not suggest that these symptoms resulted in functional limitations. Substantial evidence supports this conclusion. Plaintiff did not report frequent dropping of objects. X-rays in early 2015 showed no hand swelling or abnormalities. (R. at 1367.) Moreover, Dr. DeWalt's own

treatment notes contradict his extremely restrictive opinion.   For instance, Dr. DeWalt observed in 2015 that Plaintiff' Crohn's disease was under good control (R. at 1275, 1640, 1682), and in late 2014 that Plaintiff's blood pressure was "good" and that his blood sugar had improved.  (R. at 1630.)  Dr. DeWalt's physical examinations also revealed Plaintiff's 5/5 motor strength (R. at 994); normal cardiovascular function (R. at 989, 993, 997, 1009); and normal lung function (R. at 989, 993, 1009).  Plaintiff's testimony regarding his abilities likewise contradicts Dr. DeWalt's extreme findings, including that he was able to lift roughly ten pounds, cook, drive, and shop.  (R. at 56, 61, 290-92.)  The ALJ, therefore, offered good reasons for affording no more than some weight to Dr. DeWalt's 2014 Opinion.  *See Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) (holding ALJ's statement that a treating physician's opinion was "not well supported by the overall evidence of record and [was] inconsistent with the other medical evidence of record" was sufficient).

Plaintiff faults the ALJ for determining that the 2014 Opinion was internally inconsistent when Dr. DeWalt indicated that Plaintiff could perform low stress work but later indicated he was precluded from work altogether.  He contends that "[t]he doctor never stated that [Plaintiff] perform low stress jobs . . . . The fact that Plaintiff can tolerate low stress does not negate the other disabling limitations described by the treating source."  (Pl's Brief at 19.)  Putting aside that Dr. DeWalt responded to the question "To what degree can your patient tolerate work stress?" by checking "Capable of low stress," even if the ALJ erred in finding that the 2014 Opinion was internally inconsistent, it was harmless error.  The ALJ identified several additional reasons for concluding that Plaintiff retained the ability to perform a reduced range of sedentary work.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (upholding the ALJ's decision despite his partial reliance on an erroneous factual finding because "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, [the Court is] not to second-guess"); *Mixon v.*

*Colvin*, 12 F. Supp. 3d 1052, 1064 (S.D. Ohio 2013) (despite erroneous factual finding, the ALJ "gave good reasons for rejecting [the treating physician's] opinion").

      The ALJ also properly discounted Dr. DeWalt's opinion that Plaintiff would miss three or more work days a month on the basis that it was unsupported by the evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection."). Notably, Dr. DeWalt's estimate of likely work absences is a non-medical opinion on an issue reserved to the Commissioner of Social Security and is therefore entitled to no special deference. *See* 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-5p ("[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."); *Saulic v. Colvin*, No. 5:12CV2753, 2013 WL 5234243 at *9 (N.D. Ohio Sept. 16, 2013) (finding treating source's opinion about likely work absences did "not constitute a medical opinion"); *Arnett v. Astrue*, No. 5:08CV62-J, 2008 WL 4747209 at *5 (W.D. Ky. Oct. 17, 2008) (same). Plaintiff's argument that Dr. DeWalt supported this estimate by referring to one undated blood sugar test result and his listing of Plaintiff's symptoms is unavailing. Plaintiff fails to explain how those perfunctory notes relate to, or support, an opinion regarding attendance. Because Dr. DeWalt failed to explain how or why Plaintiff's symptoms would result in him missing work, the ALJ properly discounted this non-medical opinion.

### 2. Dr. DeWalt's 2015 Letter

      Substantial evidence also supported the ALJ's assignment of little weight to the 2015 Letter (Tr. 28-29). As with the 2014 Opinion, Dr. DeWalt failed to support the conclusory statements contained in the 2015 Letter with any specific evidence demonstrating that he relied upon "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c);

*Ellars*, 647 F. App'x at 566–67. As the ALJ explained, Dr. DeWalt's opinion was inconsistent with the medical record overall. For this reason, the ALJ properly assigned little weight to it. *Bledsoe*, 165 F. App'x at 412. This conclusion is supported by the record. Dr. DeWalt's opinion was inconsistent with Dr. Chapekis's multiple indications that Plaintiff's heart condition was not limiting. (R.. at 1156, 1161, 1170.) Dr. DeWalt's opinion was also inconsistent with Plaintiff's many unremarkable examinations. (R. at 457, 946, 1172, 1298, 1301.)

The ALJ complied with relevant regulations when declining to credit Dr. DeWalt's statements in the 2015 Letter that Plaintiff is not employable or "able to work a full-time job given his multiple medical problems. Most likely this will be a permanent disability given the chronicity of his medical issues." (R. at 1157.) Statements about ability to work are opinions on an issue reserved to the Commissioner, not medical opinions, and cannot be accorded controlling weight. 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-5p; *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010) ("When a treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled or unable to work— the opinion is not entitled to any particular weight") (internal citations omitted). Plaintiff's argument that such statements constitute "medical opinions" flies in the face of all regulatory authority and well-established case law within the Sixth Circuit. *See also Edwards v. Comm'r of Soc. Sec.*, 636 F. App'x 645, 649 (6th Cir. 2016) ("[T]he regulations make clear that no special significance is to be given to the source of an opinion on issues that are reserved to the Commissioner—including statements that a claimant is 'disabled' or 'unable to work.'"); *Dickerson v. Comm'r of Soc. Sec.*, 2017 WL 4020521, at *15 (S.D. Ohio Sept. 13, 2017) ("[T]he ALJ properly noted that Plaintiff was 'unemployable' is not a medical opinion"). The ALJ properly discounted the opinions offered by Dr. DeWalt in his 2015 Letter.

### 3. State Agency Physicians

Plaintiff also contends that the ALJ erred by giving greater weight to the opinions of the non-examining state agency physicians than the treating doctor's opinions. (Pl's Brief at p. 19-20.) The record, however, supports the ALJ's decision to afford weight to the opinions of reviewing physicians, Drs. Das and Hughes, who both opined that Plaintiff could perform a reduced range of light work. (R. at 107-108, 129-31.) State agency consultants are "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). When warranted, the opinions of agency medical and psychological consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Gayheart*, 710 F.3d at 379-80 (citing SSR 96-6p); *see also Wisecup v. Astrue*, No. 3:10-cv-325, 2011 WL 3353870, at *7 (S.D. Ohio July 15, 2011) (Report and Recommendation), adopted, 2011 WL 3360042 (S.D. Ohio Aug. 3, 2011) ("opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight"). The opinions of reviewing sources, however, "can be given weight only insofar as they are supported by evidence in the case record." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x at 997, 1002 (6th Cir. 2011) (citing SSR 96-6p).

Here, the opinions of Dr. Das and Dr. Hughes are supported by the medical evidence. Plaintiff's medical history substantiates Drs. Das and Hughes's opinions, including physical examinations revealing his normal gait, full range of motion of his neck and back, 5/5 motor strength, clear lungs, and normalized blood sugar, and diagnostic tests that show slight to no dysfunction. (R. at 457, 658, 989, 1240, 1298, 1595, 1623.) Of particular note, the ALJ's RFC finding limiting Plaintiff to sedentary work was more restrictive than the reviewing physicians' assessments that Plaintiff could perform light work.

The Court is not persuaded by Plaintiff's argument that the ALJ erred by assigning great weight to the state agency consultants because they relied on an under-developed record. The Court of Appeals for the Sixth Circuit has recognized that there is "no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm*, 405 F. App'x at 1002; *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) ("There will always be a gap between the time the agency experts review the record and . . . the time the hearing decision is issued"); *Schwer v. Comm'r of Soc. Sec.*, No. 1:16-cv-1110, 2017 WL 6375797 at *10 (S.D. Ohio Dec. 13, 2017). Absent a "clear showing" that new evidence "renders the prior opinion untenable," reliance on an older state agency opinion does not warrant remand. *Kelly*, 314 F. App'x at 831.

A review of the ALJ's decision reveals that he evaluated the evidence submitted after the state agency physicians rendered their opinions. The ALJ spent multiple pages discussing subsequent examinations, treatments, and testing results through 2016, including records submitted by Drs. DeWalt, Bourn, Levin, and Chapekis. (R. at 21-25.) This review was sufficient. *See McGrew v. Comm'r of Soc. Sec.*, 343 Fed. App'x 26, 32 (6th Cir. 2009) ("It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in [claimant's] condition."); *see also Turner v. Comm'r of Soc. Sec.*, 2018 WL 5444933 at *5 (S.D. Ohio July 24, 2018) ("Although [the state agency physicians] did not have access to the entire record at the time they authored their opinions, the ALJ properly considered, discussed, and analyzed more recent evidence in the record rather than adopting their opinions wholesale without further evidentiary review."). Indeed, the ALJ's thorough review of these additional records led him to adopt a more restrictive RFC limited to sedentary work over the restriction to light work that the reviewers proposed.

In any event, Plaintiff fails to specify any later-developed medical evidence indicating that his conditions worsened following Dr. Das and Dr. Hughes' assessments. Instead, the record establishes that Plaintiff's condition improved. Dr. DeWalt noted in 2015 that Plaintiff's Crohn's was under control. (R. at 1275, 1640, 1682.) The 2016 catheterization indicated that Plaintiff's CAD was "not causing symptoms." (R. at 1818.) Dr. Bourn observed throughout 2015 and 2016 that medication helped Plaintiff's pain and his quality of life had improved. (R. at 1298, 1308, 1311, 1314.) Notably, Drs. Das and Hughes' opinion *post-dated* Dr. DeWalt's 2014 Opinion. (R. at 107-08, 129-31, 1074-81, 1157.) For these reasons, the ALJ's decision to afford weight to these opinions was supported by substantial evidence.

It is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

## B.      Plaintiff's Subjective Allegations

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:[4]

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an

---

[4] An ALJ's consideration of a claimant's statements about symptoms and limitations, generally known as a credibility analysis, is required. But, as clarified by SSR 16-3p (applicable as of March 28, 2016), the focus is not on the claimant's propensity for truthfulness or character but rather on the consistency of his statements about the intensity, persistence, and limiting effects of symptoms with the relevant evidence. *See* SSR 16-3p, 2017 WL 5180304 at *2, *6, *11. Consequently, the Court uses the term "credibility" in the context of assessing the consistency of Plaintiff's statements about her symptoms with the evidence in the record.

impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06−CV−1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*,

127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

Plaintiff underscores the fact that the ALJ acknowledged Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." He insists that the ALJ erred in his characterization of Plaintiff's activities of daily living and his evaluation of Plaintiff's allegations of disabling pain in view of the treatment records. The undersigned disagrees and finds that substantial evidence supports the ALJ's finding that Plaintiff's allegations should not be fully accepted.

Despite Plaintiff's assertion that the ALJ based his determination on an "intangible or intuitive notion," the ALJ reached his decision by considering Plaintiff's unremarkable physical examinations and diagnostic studies; his testimony regarding his physical capabilities and activities of daily living; and the inconsistencies between his statements and the objective medical evidence. (R. at 26-27, 31.) His evaluation was consistent with the regulations. *See* 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you.")

By way of example, the ALJ noted that Plaintiff's claim that he required a cane to walk was contradicted by the many physical examinations that found a normal gait. (R. at 457, 946, 1172,

1298, 1301, 1308.) The ALJ further determined that normal findings, such as full spinal range of motion, no spasm, no edema, and normal reflexes, undermined Plaintiff's claims that he was extremely limited in his ability to sit, stand, and walk. (R. at 27, 946, 1298, 1301, 1306, 1595.) He also observed that Plaintiff claimed he had blurred vision, but that assertion was contradicted by his statements to his healthcare providers. (R. at 1160, 1219, 1574.) While not dispositive of his decision, the ALJ reiterated Plaintiff's testimony that he stopped working in part because he was laid off. (R. at 62.) And, despite his criticisms in this regard, the ALJ complied with the regulations by considering Plaintiff's activities of daily living, including his reports that he retained the ability to drive, do dishes, cook for himself, grocery shop, perform some grooming activities and handle his own finances. (R. at 61, 290-92.)

Plaintiff contends that the ALJ mischaracterized the record regarding Plaintiff's admission that he was laid off work and also did not acknowledge treatment records that showed numbness/decreased sensation, limited motion, decreased reflexes and muscle spasms. (Pl's Brief at p. 24-25.) Yet, the ALJ explicitly acknowledged Plaintiff's earlier reports of numbness, findings of limited hip range of motion, and the fact that Plaintiff experienced physical problems at the time he was laid off. (R. at 21, 22 & 26.) The ALJ nevertheless, viewing the record as a whole, concluded that the overall evidence did not support Plaintiff's allegations. To the extent Plaintiff challenges the ALJ's assessment of the record, the Sixth Circuit has repeated held that "[i]f substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted).

Finally, the ALJ did not err in considering the kinds of activities he is obligated to consider under the regulation. The ALJ did not rely exclusively on Plaintiff's activities of daily living in

assessing Plaintiff's credibility. He was well within the zone of his discretion in considering these activities. *See also Walker v. Comm'r of Soc. Sec.*, No. 2:15-CV-558, 2016 WL 692548, at *16 (S.D. Ohio Feb. 22, 2016) ("The ALJ also properly relied upon Plaintiff's activities of daily living in assessing his credibility. . . . Plaintiff's argument is unavailing because the ALJ did not rely exclusively on his activities of daily living in formulating his RFC or assessing his credibility.") (Report and Recommendation), adopted 2016 WL 1271504 (Mar. 30, 2016).

In sum, substantial evidence supports the ALJ's credibility assessment. The ALJ reasonably considered the factors under § 404.1529(c)(3) in determining that Plaintiff's subjective complaints of pain were not as severe as she alleged. The undersigned finds no compelling reason for the Court to disturb the ALJ's credibility determination.

For these reasons, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VII.  CONCLUSION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  February 5, 2020                                          /s/ *Elizabeth A. Preston Deavers*
                                                                          Elizabeth A. Preston Deavers
                                                                          Chief United States Magistrate Judge